**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| ALVINA WALLACE, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:13-CV-1349-RWS |
| NORCROSS ASSOCIATES, LLC, | : | |
| *et al.*, | : | |
| | : | |
| Defendants. | : | |

## ORDER

This case comes before the Court on Plaintiffs' Motion for Conditional

Certification of FLSA Collective Action [14].  After reviewing the record, the

Court enters the following Order.

### Background

On April 24, 2013, Plaintiffs Alvina Wallace, Jeremy Jones, Lamar

Johnson, Lance Worthy, Clayton Monroe, and Marcus Henderson filed this

putative collective action under the Fair Labor Standards Act ("FLSA"), 29

U.S.C. § 201 et seq., seeking recovery of unpaid overtime under the FLSA and

unpaid commissions under a state-law breach of contract claim.  Plaintiffs

represent a putative class of current and former Sales Associates or Sales

AO 72A
(Rev.8/82)

Representatives employed by Defendant Norcross Associates, LLC, a

telemarketing business that sold long-term telephone service contracts on behalf

of Verizon and other telephone service providers.  (Compl., Dkt. [1] ¶¶ 18, 24.)

Plaintiffs and the putative class worked on various sales campaigns

targeting both businesses and residential customers.  (Borsa Aff., Dkt. [17-5] ¶

9.)  Plaintiffs were paid according to several compensation schemes, including

on an hourly basis, an hourly plus commissions basis, a commissions-only

basis, a commissions-only basis with a $10 per hour recoverable draw against

those commissions, and an increasing hourly basis determined by the total

products and services sold.  (Donat Aff., Dkt. [17-1] ¶ 23.)  Some Plaintiffs

were subject to more than one of these arrangements over the course of their

employment.  Plaintiffs' payment history is summarized as follows:

1.   Wallace was employed from April 2, 2007, until March 16,
     2012.  During that period, she was compensated on an
     hourly basis ($13 to $15 per hour), an hourly ($13.50 per
     hour) plus commissions basis, and a commissions-only basis
     with a $10 per hour recoverable draw against her
     commissions.  (Wallace Decl., Dkt. [14-2] ¶ 12; Borsa Aff.,
     Dkt. [17-5] ¶ 7.)

2.   Jones was employed from April 27, 2011, until September
     12, 2011.  He was paid on a commissions-only basis with a
     $10 per hour draw on his commissions during his entire

employment.  (Borsa Aff., Dkt. [17-5] ¶¶ 15-16.)

3.    Johnson was employed from February 22, 2011, until
September 12, 2011.  He was paid on a commissions-only
basis with a $10 per hour draw on his commissions during
his entire employment.  (Id. ¶¶ 24-25.)  Johnson alleges that
he was paid $250 per week as a draw against commissions
earned.  (Johnson Aff., Dkt. [14-5] ¶ 9.)

4.    Worthy was employed from March 25, 2009, until April 12,
2010.  He was paid on a commissions-only basis with a $10
per hour draw on his commissions during his entire
employment.  (Borsa Aff., Dkt. [17-5] ¶¶ 33-34.)

5.    Monroe[1] was employed from March 25, 2009, until mid-
2010.  He was paid on an hourly ($14.50 per hour) plus
commissions basis for his entire employment.  (Id. ¶¶ 40-41,
at 24.)

6.    Henderson was employed from January 12, 2009, until July
2, 2010; and again from September 28, 2010, until July 10,
2011.  He was first paid on an hourly ($12 per hour) plus
commissions basis and then on a commissions-only basis.
(Id. ¶¶ 48-49.)  Henderson alleges that he was paid $400 per
week as a draw against commissions earned.  (Henderson
Aff., Dkt. [14-6] ¶ 8.)

Plaintiffs allege that they each regularly worked in excess of forty hours

per week but were not paid overtime.  (Pls.' Br., Dkt. [14-1] at 3.)  Furthermore,

---

[1]Plaintiffs concede that Monroe's FLSA claim is untimely but confirm that he
wishes to pursue his state-law claim for breach of contract for unpaid commissions.
(Pls.' Br., Dkt. [14-1] at 1 n.1.)

Plaintiffs allege that Defendants failed to pay them all of their earned commissions.  (Id.)  Defendants insist that they compensated Plaintiffs for all time worked and all commissions earned.  (Defs.' Resp., Dkt. [17] at 7-12.) Plaintiffs now move for conditional certification of this matter as a collective action under § 216(b) of the FLSA and to authorize notice to all members of the proposed class.  The proposed class is to consist of "all current and/or former Sales Associates and/or Senior Accounts Managers or similarly named employees who performed job duties substantially similar to Sales Associates or Senior Accounts Managers, such as, for example, Sales Representatives and/or Customer Service Representatives, who were employed at the corporate Defendant's Norcross, Georgia office at any time commencing on and/or subsequent to April 24, 2010," three years before the date the Complaint was filed.  (Pls.' Br., Dkt. [14-1] at 2-3.)

## Discussion

The FLSA authorizes collective actions, providing, in pertinent part:

An action . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in

4

writing to become such a party and such consent is filed with the
court in which such action is brought.

29 U.S.C. § 216(b).  Under this provision, "a putative plaintiff must

affirmatively opt into a § 216(b) action by filing his written consent with the

court in order to be considered a class member and be bound by the outcome of

the action."  Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1216 (11th Cir.

2001).  The Court, in its discretion, may authorize the sending of notice to

potential class members of their right to opt in.  Dybach v. State of Fla. Dep't of

Corrections, 942 F.2d 1562, 1567 (11th Cir. 1991).

As is clear from the plain language of § 216(b), an opt-in class may be

certified only where the named plaintiff sues on behalf of himself and other

"similarly situated" employees.  Id. at 1217 (citing 29 U.S.C. § 216(b)); Kreher

v. City of Atlanta, No. 1:04-CV-2651, 2006 WL 739572, at *2 (N.D. Ga. Mar.

20, 2006).  The Eleventh Circuit has approved a two-tiered approach to making

class certification decisions under this provision:

> The first determination is made at the so-called 'notice
> stage.'  At the notice stage, the district court makes a
> decision—usually based only on the pleadings and any affidavits
> which have been submitted—whether notice of the action should
> be given to potential class members.  Because the Court has
> minimal evidence, this determination is made using a fairly lenient

5

standard, and typically results in 'conditional certification' of a representative class.  If the district court 'conditionally certifies' the class, putative class members are given notice and an opportunity to 'opt-in.'  The action proceeds as a representative action throughout discovery.

The second determination is typically precipitated by a motion for 'decertification' by the defendant usually filed after discovery is largely complete and the matter is ready for trial.  At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question.  If the claimants are similarly situated, the district court allows the representative action to proceed to trial.  If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives—i.e. the original plaintiffs—proceed to trial on their individual claims.

Hipp, 252 F.3d at 1218 (citing Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1213-14 (5th Cir. 1995)).

This case is before the Court for the "first determination" of class certification.  In deciding whether to conditionally certify the proposed class, the Court must determine (1) whether the employees sought to be included in the putative class are "similarly situated" with respect to their job requirements and pay provisions, and (2) whether there are other employees who wish to opt in to the action.  Dybach, 942 F.2d at 1567-68.

6

A.      Similarly-Situated Requirement

Plaintiffs bear the burden of showing, under § 216(b), that they are "similarly situated" to the members of the putative class they seek to represent. Grayson, 79 F.3d at 1096.  As stated above, this burden is not a heavy one.  See also id. at 1095-96 ("[T]he 'similarly situated' requirement of § 216(b) is more elastic and less stringent than the requirements found in Rule 20 (joinder) and Rule 42 (severance).").  To satisfy the "similarly situated" requirement, "plaintiffs need show only that their positions are similar, not identical, to the positions held by the putative class members."  Id. at 1096 (internal quotation marks and citation omitted).  Additionally, "plaintiffs bear the burden of demonstrating a 'reasonable basis' for their claim of class-wide discrimination." Id.

Plaintiffs allege that they and putative class members were paid on an hourly basis, regularly worked in excess of forty hours per week, were not paid overtime, and were not paid for all earned commissions.  (Pls.' Br., Dkt. [14-1] at 3.)  Moreover, Plaintiffs allege that "1) they all had the same job title of Sales Representative, and 2) they all had the same job duties of making sales calls

AO 72A
(Rev.8/82)

from a call center to solicit customers for telephone contracts."  (Pls.' Reply, Dkt. [21] at 5.)

Defendants object to certification, arguing that the class is too vague and too broad, and that Plaintiffs cannot show that they are similarly situated to each other or to the putative class.  (Defs.' Resp., Dkt. [17] at 18.)  Defendants point out that Plaintiffs worked on different sales campaigns and "were compensated in different manners at different times under highly complex and varying commission schemes."  (Id. at 18-19.)  Therefore, Defendants contend that "any resolution of Plaintiffs' claims would require highly individualized analysis not suited for collective action."  (Id. at 18.)

Indeed, although Plaintiffs shared the same job title and job duties, they were compensated in different ways.  As a result, to determine whether Defendants violated the FLSA, the Court would have to analyze Plaintiffs' respective compensation schemes separately.  Litigating this case as a collective action would not assist the Court in determining liability for the entire class, as each employee would have to prove the number of hours worked, whether Defendants failed to compensate them for overtime hours, and whether Defendants failed to pay them any earned commissions.  "In other words, there

8

must be a fact-specific, individualized inquiry into each Plaintiff's day-to-day activities." Williams v. Accredited Home Lenders, Inc., No. 1:05-CV-1681-TWT, 2006 WL 2085312, at *4 (July 25, 2006) (denying certification when the proposed class alleged that a company's "branch managers violated the company's established overtime and timekeeping policies by requiring loan officers to work 'off-the-clock' "). Moreover, the method of calculating unpaid overtime wages or commissions would differ among class members depending on how they were compensated, preventing the Court from coming up with a common formula that could be used to calculate damages for each Plaintiff. For example, those paid on an hourly basis would require a different analysis compared to those paid by commission. Furthermore, each person paid by commission would have earned at a different rate depending on their sales. Some class members would even require multiple calculations if they were paid under different compensation schemes over the course of their employment.

In addition to the above difficulties, Plaintiffs have not shown that Defendants adopted a common policy or practice that violates the FLSA. In Morgan v. Family Dollar Stores, Inc., the Eleventh Circuit held that a class of store managers was similarly situated because the managers' job duties were

similar, they received no overtime pay, and they were paid base salaries regardless of how many hours they worked.  551 F.3d 1233, 1263 (11th Cir. 2008).  As the court explained, the store "uniformly exempted all store managers from overtime pay requirements, and its exemption decision did not turn on any individualized factors."  Id. at 1264.  Here, the allegations fail to show a uniform policy like the one in Morgan.  Rather, Plaintiffs' cause of action is based on Defendants' accounting of their individual hours worked and commissions earned.

In another context, the Eleventh Circuit found that a class of K Mart store managers who had been demoted from 1990 through 1992 were similarly situated when they alleged that their demotions were due to age discrimination. Grayson, 79 F.3d at 1091.  Here, Plaintiffs have not shown that Defendants discriminated against Plaintiffs in the same manner.

In sum, the differences in Plaintiffs' compensation schemes, the individualized assessments that would be required to determine liability, and the absence of a common policy or practice in violation of the FLSA demonstrate that certifying this case as a collective action would not aide in the resolution of common issues of law or fact.  See Morgan, 551 F.3d at 1265 (explaining that

10

the purposes of collective actions under the FLSA are: "(1) reducing the burden on plaintiffs through the pooling of resources, and (2) efficiently resolving common issues of law and fact that arise from the same illegal conduct"). Despite Plaintiffs' light burden at the conditional certification stage, based on the allegations and affidavits in the record, the Court finds that the putative class is not similarly situated.  Consequently, Plaintiffs' Motion for Conditional Certification of FLSA Collective Action [14] is **DENIED**.

## Conclusion

For the foregoing reasons, Plaintiffs' Motion for Conditional Certification of FLSA Collective Action [14] is **DENIED**.

**SO ORDERED**, this  8th  day of April, 2014.


RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

11

AO 72A
(Rev.8/82)